WESTERN SURETY CO., Respondent, v. MELLETTE
COUNTY, Appellant.

(257 N. W. 461.)

(File No. 7750. Opinion filed December 3, 1934.)

*R. W. Hutchinson,* State's Attorney, of White River, for Appellant.

*Tom Kirby,* of Sioux Falls, for Respondent.

CAMPBELL, J. Plaintiff was the payee named in seven warrants drawn in customary form upon the general fund of Mellette county, executed by the proper officers of said county, under the seal of the county, and delivered to plaintiff for value at divers dates between September 4, 1923, and January 3, 1927. Each of said warrants at or about its date was duly presented for payment, not paid for want of funds and registered (section 6975, Rev. Code 1919), becoming thereby a registered warrant within the meaning of section 6976, Rev. Code 1919. Plaintiff, continuing to be the owner and holder of said registered warrants, and the same continuing entirely unpaid, on April 4, 1931, instituted the present action to recover a money judgment against Mellette county thereon. The amended answer of the county, in addition to a general denial, pleaded the following defenses: First, as to each warrant, that it was invalid in its inception because by its issuance a debt of the county was created or incurred in excess of the permissible constitutional limit (5 per cent upon the assessed valuation of taxable property in the county for the preceding year, Constitution S. D. art. 13, § 4). Second, that the action was prematurely brought and should be abated because there was no money in the county general fund applicable to the payment of said warrants in the order of their registration (section 6976, Rev. Code 1919), and sufficient time had not elapsed to enable the county by levying and collecting taxes in the manner provided by law to acquire money applicable to said warrants. Third, that, if the county had ever had any money legally applicable to the payment of said warrants or if sufficient time had ever elapsed to permit the accumulation of such money, then said moneys had been on hand and such time had elapsed more than six years prior to the commencement of the action whereby the suit was barred by the six-year statute of limitations (section 2298, Rev. Code 1919). The case came on for trial upon the issues thus joined. The warrants were introduced in evidence, being numbered as exhibits from 1 to 7, inclusive. For purposes of identification we will hereafter in this opinion refer to the various warrants by their respective exhibit

numbers. Relevant facts were stipulated in considerable detail. The learned trial judge adopted the stipulated facts as his findings, and thereupon entered conclusions of law, which were simply to the effect that plaintiff was entitled to judgment for the face plus interest from date of the Warrants Exhibits 1, 3, 4, and 6, and that the defendant county was entitled to judgment dismissing the complaint upon the merits as to the Warrants Exhibits 2, 5, and 7. From the judgment entered accordingly (and from the judgment only), defendant county has now appealed and seeks to present in this court the same contentions set forth in its answer below.

■ We will examine first the question of whether the respective warrants upon which recovery was allowed are susceptible of successful attack upon the ground that the issuance thereof created an unconstitutional debt of the county. It is stipulated that each of the warrants in question was given in payment of a current county expense of the year of its issue, and that the indebtedness thereby represented was incurred at the date of the warrant. In this connection respondent relies upon a doctrine which seems to this writer utterly fallacious in its assumptions and pernicious beyond measure in its effects. The doctrine is bottomed upon the assumption, which is certainly no longer true if ever it was, that in any given year cash will come into the county treasury in amount equal to the tax levy made for that year. In other words, it assumes prompt and practically 100 per cent payment of taxes. Also it overlooks the fact that, since registered warrants must be paid in the order of their registration out of moneys accruing to the fund upon which the warrants are drawn as soon as such moneys come into the fund (section 6976, Rev. Code 1919; Western Town-Lot Co. v. Lane (1895) 7 S. D. 1, 62 N. W. 982; on rehearing Id. (1895) 7 S. D. 599, 65 N. W. 17; State ex rel City of Huron v. Campbell (1895) 7 S. D. 568, 64 N. W. 1125; Stewart v. Custer County (1900) 14 S. D. 155, 84 N. W. 764; Blackman v. City of Hot Springs (1901) 14 S. D. 497, 85 N. W. 996), money levied for any fund for any given year is not, as a matter of fact and law, available for current expenses out of that fund for that particular year if there are outstanding registered warrants against the fund at the beginning of the fiscal year equal to or exceeding the amount of the levy. Time and experience have

demonstrated that in operation this doctrine has permitted the actual obligations of many taxing districts (as distinguished from their constitutional net indebtedness) to exceed their tangible, collectable assets to such an extent that in truth the districts are, for all practical purposes, hopelessly insolvent, regardless of the fact that their indebtedness may be reduced to constitutional limits by applying against it such worthless and fictitious credits as money in failed banks and a vast amount of uncollected and actually uncollectable taxes. The doctrine is nevertheless firmly entrenched in the law of this state and may be thus rubricated; warrants for current expenses during any fiscal year may be issued in anticipation of and within the limits of a lawful tax levy for such purposes for such period, even though such levy has not yet been collected, and the issuance of such warrants will not be deemed the incurring of an indebtedness or the increasing of existing indebtedness within the meaning of the constitutional prohibition. Re State Warrants (1895) 6 S.D. 518, 62 N.W. 101, 55 Am. St. Rep. 852; Western Town-Lot Co. v. Lane (1895) 7 S.D. 1, 62 N.W. 982; Shannon v. City of Huron (1896) 9 S.D. 356, 69 N.W. 598; Lawrence County v. Meade County (1897) 10 S.D. 175, 72 N.W. 405; C. & N. W. Ry. Co. v. Faulk County (1902) 15 S. D. 501, 90 N. W. 149; Walling v. Lummis (1902) 16 S. D. 349, 92 N. W. 1063; Williamson v. Aldrich (1906) 21 S. D. 13, 108 N. W. 1063; McCavick v. Ind. School Dist. (1910) 25 S. D. 449, 127 N. W. 476. The Warrant Exhibit 3 was issued July 8, 1925, for $321.79. The general fund levy for 1925 was $15,402, and general fund warrants previously drawn during the year amounted to only $13,700. The Warrant Exhibit 4 was issued July 21, 1926, for $221.23. The general fund levy for 1926 was $17,222, and general fund warrants previously drawn during the year amounted only to $15,290. The Warrant Exhibit 6 was issued January 3, 1927, for $448.10. The general fund levy for 1927 was $17,123, and general fund warrants previously drawn during the year amounted only to $65. It is plain, therefore, as to these three warrants that they fall within the protection of the doctrine above stated.

With reference to the Warrant Exhibit 1 it was for $225.30, issued September 4, 1923. The general fund levy for the year 1923 was $12,712. Warrants previously drawn against the general fund during the year 1923 amounted to $14,830. The

validity of this warrant, therefore, is not sustainable upon the theory above indicated. The warrant must be treated as incurring a debt when it was drawn. It is the law of this state, however (or at least it was at the time this warrant was issued, which was prior to the adoption of the County Budget Law, chapter 79, Laws 1927), that current expenditures need not be kept within the current tax levy for any given year unless the constitutional debt limit had been reached. State v. Board of Com'rs of Edmunds County (1916) 36 S. D. 606, 156 N. W. 96. When the Warrant Exhibit 1 was issued in 1923, the assessed valuation of taxable property in Mellette county for the preceding year was $6,338,831, whereby the 1923 debt limit became 5 per cent thereof, or $316,942. The actual outstanding indebtedness of the county at the time the Warrant Exhibit 1 was issued (including $14,830 worth of warrants previously drawn against the general fund during the year 1923) was $370,786. The county had cash on hand January 1, 1923, to the amount of $7,968. The total tax levy of the county duly made and in process of collection for the fiscal year 1923 amounted to $52,224. · Applying these two credit items aggregating $60,192 (and it seems to be the law of this state that such credit application should be made in determining just what the indebtedness is within the meaning of the Constitution, McCavick v. Ind. School Dist., supra; Williamson v. Aldrich, supra; Lollich v. Hot Springs School Dist. (1924) 47 S. D. 624, 201 N. W. 354), the net constitutional indebtedness of the county at the time of the issuance of the Warrant Exhibit 1 was $60,192 less than $370,786, or $310,594. This net indebtedness being something over $6,000 less than the constitutional limit, the issuance of the Warrant Exhibit 1 for $225.30 did not accomplish an unconstitutional increase in the indebtedness of the county. It seems very plain, therefore, under the established law of this state, that all four of the warrants in question were valid in their inception and are good as against the attack here sought to be made thereon.

We turn now to the second contention of appellant. It is the law of this state that the owner and holder of a valid unpaid registered county warrant has a prima facie case against the county for money judgment thereon at any time. As above indicated, it is the law that registered warrants against any fund must be paid in the order of registration as rapidly as moneys accrue

to the fund, and it is the duty of the county by lawful levy to get money into the fund to meet the warrants. No warrant holder is obliged to have his warrant registered. Section 6975, Rev. Code 1919; Brannon v. White Lake Twp. (1903) 17 S. D. 83, 95 N. W. 284. When he has it registered he agrees, in substance, to wait his turn for its payment in the manner above set out. Brannon v. White Lake Twp., supra. It is therefore the law, notwithstanding the fact that ownership of the warrant gives rise to a prima facie cause of action thereon at any time, that the county may success-fully plead in abatement that money applicable to the particular warrant in the order of its registration has not yet come into the fund upon which it was drawn and that sufficient time has not yet elapsed to enable the county to get such money into such fund. E. A. L. & M. Co. v. City of Mitchell (1891) 1 S. D. 593, 48 N. W. 131; Heffleman v. Pennington County (1892) 3 S. D. 162, 52 N. W. 851; Thomas Kane & Co. v. Hughes County (1900) 12 S. D. 438, 81 N. W. 894. But the burden is upon the county to estab-lish grounds for the abatement, else the prima facie case made by the warrant will prevail. Stewart v. Custer County (1900) 14 S. D. 155, 84 N. W. 764; Brannon v. White Lake Twp., supra.

This being an appeal from the judgment only, it cannot be held, upon the record now before us, that appellant is correct in its contention that the action should have been abated unless from the findings of fact there affirmatively appears the ultimate fact that, when this action was instituted, there was no money in the general fund of Mellette county applicable to the payment of the warrants in question and that sufficient time had not elapsed since the issuance of the respective warrants to enable the county (acting properly and with due diligence) to get in money applicable to these warrants. Upon this ultimate fact question there is no direct or specific finding of the trial court. The stipulated facts show that, when the Warrant Exhibit 1 issued on September 4, 1923, the out-standing indebtedness of Mellette county was $370,786. How much of that indebtedness consisted of warrants registered against the general fund the findings fail to show, excepting only that they do show that the total indebtedness included warrants drawn against the general fund during the year 1923 prior to Warrant Exhibit 1 to the extent of $14,830. The findings show that at the time the last Warrant Exhibit 6 was issued on January 3, 1927, the out-

standing indebtedness of the county was $504,239. How much of that consisted of general fund warrants the record does not show. The findings show that between 1923 and the date of the institution of the action Mellette county diverted an appreciable amount of money coming into its general fund to the payment of current expenses rather than to the retirement of outstanding registered warrants against the fund in their order. The so-called County Budget Law, chapter 79, Laws 1927, contemplated, in substance, that counties should get themselves onto a cash basis and should so continue. Section 19 of the law provided that floating indebtedness (that is, outstanding registered warrants) should be taken care of in connection with the new cash basis scheme either by retiring the same out of the proceeds of bond sales or by special tax levies between 1928 and 1935. The findings show that Mellette county made this special tax levy for retiring outstanding warrants during two years only, being the years 1928 and 1929.

 In any event, and regardless of any provisions of the County Budget Law, Mellette county could not constitutionally devote moneys accruing to its general fund to the payment of current expenses until outstanding registered warrants on such fund were first retired. The statutes of this state provide that registered warrants shall be so retired and, at least as to warrants issued and delivered before the effective date of the County Budget Law, the holders thereof have a vested right to have the same paid in the order and manner provided by law at the time of the issuance, which law became a part of the warrant contract and of which vested right they cannot be deprived either by Mellette county or by the Legislature. Western Town-Lot Co. v. Lane (1895) 7 S. D. 1, 62 N. W. 982. The situation in the instant case is markedly different, as disclosed by the stipulated facts, from that in Stewart v. Custer County (1900) 14 S. D. 155, 84 N. W. 764, wherein it was conceded that warrants were being paid in the order of registration and that the county officers had done all that the law justified and all that they could do in the way of levying and collecting taxes for the fund. The situation here disclosed is much more comparable to that in Blackman v. City of Hot Springs (1901) 14 S. D. 497, 85 N. W. 996, where maximum levies had not been made and cash received had not been appropriated to registered warrants in their order. We do not think it can be said upon the

facts stipulated and found in this case that any clear or necessary inference arises that money would not have been available for the retirement of respondent's warrants before the institution of the present action if the county authorities had done their duty. Upon this record, therefore, the defense that the action should be abated as premature is not sustained.

■■■ We come then to consider the defense of the statute of limitations. This is applicable really only to the Warrant Exhibit 1 drawn September 4, 1923. Appellant contends that the six-year statute of limitations (section 2298, Rev. Code 1919) applies to county warrants since the taking effect of the 1919 Code. Respondent maintains that the warrants in question, being in fact sealed, are governed by subdivision 2 of section 2295, Rev. Code 1919, being the twenty-year statute. This court in Heffleman v. Pennington County (1892) 3 S. D. 162, 52 N. W. 851, held that the twenty-year statute applied to county warrants. The law then in effect affirmatively required the county seal upon such warrants, Section 603, Comp. Laws Dak. 1887, continued as section 843, Rev. Pol. Code 1903. It is clearly inferable from the Heffleman Case, however, that the court would have held the six-year statute appliable regardless of whether or not the warrant was actually under seal excepting for the fact that the statute positively required the seal; the court citing in that connection Crudup v. Ramsey (1891) 54 Ark. 168, 15 S. W. 458. The Code commissioners in 1919 dropped out of our law entirely section 843, Rev. Pol. Code 1903, requiring the seal on county warrants. Since that time the question of what statute of limitations is applicable to the case of a county warrant in fact under seal, though no longer required so to be, has not been presented to this court. Certainly this court as constituted at the time of the Heffleman decision would have held the six-year statute applicable under such circumstances. That also has been given as the opinion of the Attorney General of this state. Opinions Attorney General 1932, p. 178. We think, however, we need not undertake to decide the question in this case. Assuming that the six-year statute governed, manifestly the statute would not begin to run at any earlier date than an enforceable cause of action (not subject to be abated as hereinbefore discussed) accrued upon the registered warrant, which, as previously indicated, would be the time when there was or ought to be, if the

county officers had performed their duties, money in the fund to retire the warrant. Appellant therefore does not maintain its affirmative defense of limitations (even assuming the applicability of the six-year statute), unless the findings in this case affirmatively show that six years before the institution of the action (that is, on or before April 4, 1925) there was or should have been money in the general fund of Mellette county properly applicable to the Warrant Exhibit I in the order of its registration. No such facts are found or arise as a necessary inference from found facts, and consequently the defense of limitations is not made out upon this record.

Being of the opinion, under the established law of this state, that the respective warrants were valid when issued and that upon the record herein appellant has not made out its defense of premature suit or its defense of limitations, the judgment appealed from is affirmed.

All the Judges concur.