FORSTING, et al, Respondents, v. HOILIEN (FLETCHER Intervener), Appellant.

(274 N. W. 654)

(File No. 8101. Opinion filed July 29, 1937)

*A. C. Campbell,* of Frederick, for Appellant.

*Geo. H. Fletcher,* of Aberdeen, pro se.

*Chas. E. Gorsuch,* of Aberdeen, *H. M. Hembd,* of Ipswich, and *L. A. Melby,* of Webster, for Respondents.

RUDOLPH, P. J. On September 4, 1936, the Brown county board of commissioners adopted its annual budget and levied a tax to raise the amount thereof. This levy totaled 5 mills on the dollar of the assessed valuation of the county, which was the limit the county might levy under the provisions of section 6737, Rev. Code 1919, Brown county having an assessed valuation of more **than** $40,000,000. Thereafter on June 1, 1937, the amount of money levied on September 4, 1936, for the general fund was exhausted by warrants issued against it and the county commissioners on the

16th day of June, 1937, adopted a supplemental budget, as follows:

"General Fund—

| | | Estimated |
|---|---|---|
| Commissioners: | | Expenditures |
| Per Diem | ..................... | $ 1,720.00 |
| Mileage | ...................... | 1,075.00 |
| Expense | ...................... | 215.00 |
| Printing and Adv. | .............. | 2,800.00 |
| Auditor: | | |
| Elections | | |
| Office Expense | ................. | 2,000.00 |
| Treasurer: | | |
| Office Expense | ................. | 1,575.00 |
| Tax Sale | ..................... | 1,000.00 |
| Clerk of Courts: | | |
| Office Expense | ................. | 516.00 |
| Register of Deeds: | | |
| Office Expense | ................. | 430.00 |
| County Home: | | |
| Care of Inmates | ............... | 3,440.00 |
| Upkeep | ....................... | 1,000.00 |
| Supt. of Schools: | | |
| Office Expense | ................. | 860.00 |
| Mileage | ...................... | 301.00 |
| Textbooks | ..................... | 2,150.00 |
| Institute | ...................... | 215.00 |
| Sheriff: | | |
| Office Expense | ................. | 258.00 |
| Mileage | ...................... | 8,000.00 |
| Board of Prisoners | ............. | 1,290.00 |
| States Attorney: | | |
| Office Expense | ................. | 1,075.00 |
| Courts: | | |
| Witness and Jury | ............... | 6,020.00 |
| Office Expense | ................. | 688.00 |
| Coroner: | ...................... | 129.00 |
| Courthouse and Grounds: | | |
| Maintenance | ................... | 3,500.00 |

| | |
|---|---|
| Agricultural Extension: ............... | 1,376.00 |
| Board of Insanity: ............... | 215.00 |
| Bounties: ............... | 430.00 |
| Care of Poor: ............... | 150,000.00 |
| County and State Fair: ............... | 9,847.00 |
| Vital Statistics: ............... | 312.00 |
| Compensation Insurance: ............... | 645.00 |
| Welfare Board: ............... | 215.00 |
| Audit: ............... | 344.00 |
| Board of Health: ............... | 1,075.00 |

Total ...................$204,716.00."

The defendant, county auditor of Brown county, has refused to issue warrants drawn against the appropriations made by the supplemental budget, and in this action the county commissioners of Brown county seek a declaration of the right of the auditor to refuse to issue warrants against this appropriation. The case was presented to the trial court upon a stipulation of facts which is made a part of this record. The assessed valuation of Brown county for the year 1936 was $42,712,849. Brown county has an outstanding bonded indebtedness of $409,000, and a warrant indebtedness of $77,668. Under the provisions of section 4 of article 13, the constitutional debt limit of Brown county is 5 per cent. of the assessed valuation of 1936, which would amount to something over $2,000,000. It would appear therefore that no question of the county exceeding its constitutional debt limit is here involved.

The 1927 County Budget Law, chapter 79, Laws of 1927, was amended by chapter 95, Laws of 1929. This 1929 act amended section 10 of the original act which related to a supplemental budget by making a new provision for a supplemental budget under the following circumstances:

"* * * in the event of the failure to provide by the final budget a sufficient revenue to enable the county to conduct the indispensable functions of government in any department, or to pay just obligations upon the county for the necessary conduct of the courts, or for the necessary aid and support of the poor or to discharge any duty which it is the lawful duty of the county to discharge, and of which requires the incurring of liabilities or

expenditures of funds for a purpose or object for which no provision has been made in the annual budget for such fiscal year, and when such occasion arises the Board of County Commissioners of the county must make, approve and adopt a supplemental budget providing therein for an appropriation for such purposes in such amount as the Board of County Commissioners may deem necessary."

The supplemental budget adopted by the Brown county commissioners comes within the meaning of this 1929 amendment. The items therein contained are either for the purpose of enabling the county "to conduct the indispensable functions of government," "for the necessary aid and support of the poor" the budgeted funds for which have been exhausted, or to enable the county to discharge a lawful duty "for which no provision has been made in the annual budget."

The original budget law of 1927 contemplated that the counties should conduct their business on a cash basis. The law provided that the county commissioners should budget their expenditures for the next fiscal year and then levy a tax to be collected during the next fiscal year to meet these expenditures as budgeted. Section 17, c. 79, Laws 1927. In the 1927 law only two exceptions were provided for making expenditures not appropriated for or budgeted in the annual budget which were to be set up in a supplemental budget. These two exceptions were contained in section 10 of the act and related, first, to "an epidemic or disease, or act of God, disaster, catastrophe or accident"; and, second, an act of the Legislature "imposing some new obligation or duty upon a county." It should be noted that the original section 10 in express words provided that the county commissioners should not "make * * * any expenditure or expenditures * * * other than in * * * the annual budget * * * provided, * * * save and except" the two instances just above noted. This to our minds indicates that it was contemplated that in the two exceptions referred to above the county commissioners were authorized to make expenditures upon the adoption of the supplemental budget provided for therein. In 1929 the Legislature so extended the provisions for a supplemental budget by amending section 10 that the supplemental budget might now include the many items here-

inbefore set out. This 1929 amendment of section 10 contained the same prohibitions against making expenditures "save and except" where those expenditures are provided for by a supplemental budget clearly implying that, if the expenditures come within the reasons and are provided for by a supplemental budget, the county commissioners might make the expenditures and not run afoul of the county budget law. It might be' that the Legislature of 1929 by making such extensive provisions for a supplemental budget, largely defeated the object of the 1927 law of putting the counties on a cash basis, but this court may not ignore the amendment of 1929 any more than it may ignore the original law. The original law placed the counties on a cash basis, except as to those items that might be provided for by a supplemental budget; as to those items expenditures could be made without first having a tax levy to meet them. The 1929 amendment, when it made the exceptions more extensive, made it possible to the extent of the increased exception for the counties to conduct their affairs on a basis other than cash.

The budget law, wherein it provides for expenditures for purposes provided by a supplemental budget, says nothing about a tax levy to meet such expenditures, nor is there, under the terms of the budget law, any necessity for a tax levy prior to making the expenditures provided for by such budget. Clearly, it would seem, therefore, that we must revert to the law as established prior to adoption of the budget law in order to determine whether it is permissible for the county commissioners to incur an indebtedness without a tax levy. This court clearly stated that law as it was prior to the adoption of the county budget law in the case of Western Surety Company v. Mellette County, 63 S. D. 243, 257 N. W. 461, 463, wherein it said: "It is the law of this state, however, * * * that current expenditures need not be kept within the current tax levy for any given year unless the constitutional debt limit had been reached." See State v. Board of Com'rs of Edmunds County, 36 S. D. 606, 156 N. W. 96; Dring v. St. Lawrence Tp., 23 S. D. 624, 122 N. W. 664; Lawrence County v. Meade County, 10 S. D. 175, 72 N. W. 405. There being nothing in the budget law requiring a tax levy prior to an expenditure provided for by a supplemental budget, and it being the law of this state,

apart from the budget law, that current expenditures need not be kept within the current tax levy, we conclude that the county commissioners of Brown county might incur indebtedness in accord with the provisions of the supplemental budget and the county auditor should issue warrants for such indebtedness, unless other provisions of our law relating to county indebtedness make such action illegal.

We consider now the provisions of section 6957, Rev. Code 1919, which provides as follows: "It shall be unlawful for the officers of any county, civil township, city, town or school district, unless specially and expressly authorized by law, to contract any debt or incur any pecuniary liability for the payment of either the principal or interest for which, during the current year or any subsequent year, it will be necessary to levy on the taxable property of such county, township, city, town or school district, a higher rate of tax than the maximum rate prescribed by law." This section of our code appeared in the same form as it now appears in section 140, chapter 28, Laws 1897, and has been a part of our law since that time. During the forty years that this law has been upon our statute books, it has never been construed by this court. The meaning of this statute is certainly not without doubt. Literally the statute provides that it is unlawful for the officer of any county to contract any debt which to pay it would be necessary to make a levy in excess of that prescribed by law "during the current year or any subsequent year." Just how the officers of a county in incurring indebtedness could tell whether it would be necessary to exceed levy limits during the current year or any subsequent year is somewhat difficult of ascertainment. "During the current year" as used in the statute, we are satisfied refers to the levy to be made during the current fiscal year in which the indebtedness is created. The statute speaks of the future. It says, no indebtedness shall be created which to pay "it will be necessary to levy," etc. This wording refers to a levy not yet made. It follows, we believe, that under this statute the county commissioners have authority to anticipate the future levy for the year in which the expenditure is made. But the statute does not limit its language to the "current year." It says, "or any subsequent year." To hold that the county commissioners in incurring an indebted-

ness might anticipate the tax levy for any and all subsequent years would, in our opinion, render the statute entirely meaningless. We believe the term "subsequent year" as used in the statute refers to the situation where the tax levy has been made for the current year, then, under the statute, the commissioners are permitted in incurring indebtedness to anticipate the levy to be made the next or subsequent year. In the instant case the amount appropriated by the supplemental budget does not exceed the 5-mill levy limitation (the assessed valuation being approximately the same as 1936) which it is permissible for the county commissioners to levy for the current year 1937, and which under the terms of section 6957 they might anticipate. We assume there are taxes in the process of collection to pay all outstanding warrants. It might also transpire that it will not be necessary for the commissioners to expend the entire amount appropriated by the supplemental budget or incur liability commensurate therewith. Clearly, therefore, it appears to us that at the present time at least the above section 6957 cannot control our decision herein.

 Nothing herein should be construed as authorizing the county commissoiners of Brown county to ever exceed the statutory limitation placed upon the county tax levy under the provisions of section 6737. It might also be well to point out that this court has consistently held that it is the law of this state that a county cannot constitutionally devote money accruing to its general fund to the payment of current expenses until outstanding registered warrants on such fund were first retired. If, therefore, it becomes necessary for Brown county to issue and register warrants against its general fund, the first moneys accruing to that fund must go to the retirement of these warrants. It may transpire that at the end of the current fiscal year there will be moneys on hand in other funds which may be transferred under the provisions of section 18, c. 79, Laws 1927, to the general fund and thereby be made available for the payment of warrants issued against that fund. If there is no money available for the general fund for the next year other than moneys to be raised by the current tax levy, it would appear then that a further financial problem will confront the county in not a very far distant future, especially if it is necessary to incur indebtedness to the extent appropriated by this sup-

plemental budget. However, that appears to be an administrative problem for Brown county officials and not a problem for this court at this time. We have only sought to determine the present right of the defendant auditor to refuse to issue warrants against the general fund for the purposes for which an appropriation is made by the supplemental budget.

The judgment appealed from is affirmed, in so far as it determines that it is the duty of the county auditor to issue such warrants as the county board may authorize and direct against funds provided for in the supplemental budget. No costs will be taxed.

POLLEY and ROBERTS, JJ., concur.

WARREN and SMITH, JJ., not sitting.